USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___5/5/2021___

INGRID NUSS,

                          Plaintiff,

            -against-

GUARDIAN LIFE INSURANCE COMPANY
OF AMERICA,

                          Defendant.

1:20-cv-9189-MKV

MEMORANDUM
OPINION AND ORDER

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Ingrid Nuss ("Plaintiff") brings this action against Defendant Guardian Life Insurance Company of America ("Defendant") to recover long-term disability benefits under the Employee Retirement Income Security Act ("ERISA"), 28 U.S.C. § 1132. (Compl. [ECF No. 1].) Defendant has moved to transfer this action to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a). (Mot. Transfer [ECF No. 8].) For the reasons discussed below, Defendant's motion is GRANTED and this case shall be TRANSFERRED to the Northern District of Georgia.

## BACKGROUND

Plaintiff began working in Atlanta, Georgia, as an attorney for Drew Eckl & Farnham, LLP ("Drew Eckl"), a Georgia-based law firm, in 2013. (Compl. ¶ 19; Compl. Ex. B at 1 [ECF No. 1-2]; Wiltrout Decl. ¶ 2 [ECF No. 9-1]; *see* Compl. Ex. H at 3 [ECF No. 1-8].) A decade later, she grew ill, experiencing continuous nausea, vomiting, abdominal pain, and fatigue, among other symptoms. (Compl. ¶¶ 22–26.) Thereafter, Plaintiff was diagnosed with gastroparesis and came under the care of multiple Georgia-based doctors. (Compl. ¶¶ 30–32; Compl. Ex. D [ECF No. 1-4]; Wiltrout Decl. Ex. 6 at 1 [ECF No. 9-7].)

Plaintiff's medical condition caused her productivity and work quality to decline. (Compl. ¶¶ 27–29.) Consequently, Drek Eckl recommended that Plaintiff take a leave of absence. (Compl.

¶ 33.)  Plaintiff's symptoms began improving, so she returned to work on a part-time basis two months after leaving the firm.  (Compl. ¶¶ 34–35.)  The work proved too taxing, however, causing Plaintiff to need to cease working after only a few months back at the firm.  (Compl. ¶ 39.)

During this time, Plaintiff filed a long-term disability claim with Defendant.  (Compl. ¶ 38.)  Defendant's disability claims unit, located in Pennsylvania, approved Plaintiff's claim for benefits.  (Compl. ¶ 40; Wiltrout Decl. ¶ 4.)

Plaintiff again returned to work at Drew Eckl in Atlanta on a part-time basis in 2016.  (Compl. ¶ 42.)  The quality of her work, however, did not meet expectations.  (Compl. ¶ 45.)  Plaintiff ultimately stopped working in 2018.  (Compl. ¶¶ 46–47.)

In 2019, after a periodic review of her disability claim, Defendant terminated Plaintiff's long-term disability benefits.  (Compl. ¶¶ 49, 53.)  Plaintiff appealed the termination to Defendant's appeals department in Lexington, Kentucky, but Defendant affirmed its decision.  (Compl. ¶¶ 59, 93; Wiltrout Decl. Ex. 5 at 1–2 [ECF No. 9-6].)

Plaintiff filed this action in November 2020, alleging violations of ERISA.  (Compl. ¶¶ 95, 104–10.)  Shortly thereafter, Defendant answered the Complaint (Answer [ECF No. 11]) and moved to transfer this action to the Northern District of Georgia, arguing that this case has no connection to New York (Mot. Transfer; Def.'s Br. [ECF No. 9]).  In support of its motion, Defendant filed a declaration with several exhibits.  (Wiltrout Decl. [ECF No. 9-1].)  Plaintiff filed an opposition (Pl.'s Opp. [ECF No. 13]), and Defendant filed a reply (Def.'s Reply [ECF No. 16]).[1]

---

[1] Plaintiff requested oral argument on this motion. (Pl.'s Letter Mot. [ECF No. 18].) Because oral argument is not necessary and would not be helpful to rule on this motion, Plaintiff's request is denied. *See AD/SAT, Div. of Skylight, Inc. v. Assoc. Press*, 181 F.3d 216, 226 (2d Cir. 1999) (per curiam) (noting that "a district court's decision whether to permit oral argument rests within its discretion" (citing *Katz v. Morgenthau*, 892 F.2d 20, 22 (2d Cir. 1989))); *see also Henderson v. Lagoudis*, No. 3:12cv1688 (JBA), 2014 WL 813120, at *1 n.1 (D. Conn. Feb. 28, 2014) (denying request for oral argument because it was not necessary to decide pending motion).

# LEGAL STANDARD

The Court may transfer a civil action to any district where the action could have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)); *see Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The movant on a Section 1404(a) motion bears the burden of establishing the propriety of transfer by clear and convincing evidence. *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N.A., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (collecting cases).

A motion to transfer requires a two-step inquiry. First, the Court must determine whether the case could have been brought in the proposed transferee district. *Hoadley v. MoneyGram Payment Sys., Inc.*, No. 08-cv-11192, 2009 WL 2001327, at *2 (S.D.N.Y. July 9, 2009) (citing *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 56 (S.D.N.Y. 2001)). An action could have been brought in another forum if the proposed transferee district has personal jurisdiction over the defendant and venue is proper there. *Robertson v. Cartinhour*, No. 10 Civ. 8442 (LTS), 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011).

Second, the Court must determine whether transfer of the case is appropriate. *Hoadley*, 2009 WL 2001327, at *2 (citing *D.H. Blair*, 462 F.3d at 106). The Second Circuit has identified several factors courts should consider in making this determination, including "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the

relative means of the parties." *D.H. Blair*, 462 F.3d at 106–07 (quoting *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)). District courts have identified additional factors, including (8) "the forum's familiarity with the governing law" and (9) "trial efficiency and the interests of justice, based on the totality of the circumstances." *Kaufman v. Salesforce.com, Inc.*, No. 20-CV-06879 (JPC)(SN), 2021 WL 1687378, at *2 (S.D.N.Y. Apr. 29, 2021) (citing *Knowles-Carter v. Feyonce*, Inc., No. 16-cv-02532 (AJN), 2017 WL 11567528, at *9 (S.D.N.Y. Sept. 23, 2017); and *TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 173 (S.D.N.Y. 2009)); *see also Cadilla v. MFX Sols., Inc.*, 20 Civ. 5966 (AKH), 2021 WL 1268339, at *2 (S.D.N.Y. Apr. 6, 2021); *Nelson v. Wells Fargo Bank, N.A.*, No. 17-CV-4045 (LAP), 2019 WL 2514229, at *7 (S.D.N.Y. June 18, 2019). "There is no strict formula for the application of these factors, and no single factor is determinative." *Wald v. Bank of America Corp.*, 856 F. Supp. 2d 545, 549 (E.D.N.Y. 2012) (quoting *Delta Air Lines v. Ass'n of Flight Attendants*, 720 F. Supp. 2d 213, 217 (E.D.N.Y. 2010)).

## ANALYSIS

Defendant has met its burden of establishing the propriety of transfer. First, this action could have been brought in the Northern District of Georgia. ERISA contains a venue provision providing that an action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Plaintiff admits that venue would be proper in the Northern District of Georgia because that is where the breach took place. (Pl.'s Opp. 2.) Furthermore, Defendant has impliedly consented to personal jurisdiction in Georgia by moving to transfer venue to the Northern District of Georgia. *See Innovate1 v. First Bridge Merchant Sols., LLC*, No. 3:19-CV-01123 (KAD), 2020 WL 4718970, at *6 n.8 (D. Conn. Aug. 13, 2020); *Marotto v. Kellogg Co.*, No. 18 CIV. 3545 (AKH),

2018 WL 10667923, at *5 (S.D.N.Y. Nov. 29, 2018); *Bent v. Zounds Hearing Franchising, LLC*, No. 15-cv-6555 (PAE), 2016 WL 153092, at *5 (S.D.N.Y. Jan. 12, 2016); *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 134 (2d Cir. 2011) (alterations, ellipsis, and internal quotation marks omitted) ("A court will obtain, through implied consent, personal jurisdiction over a defendant if the actions of the defendant during the litigation amount to a legal submission to the jurisdiction of the court, whether voluntary or not." (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704–05 (1982))); *accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985).

Second, considering the nine transfer factors, the Court finds that transfer to the Northern District of Georgia is appropriate.

### 1. *Plaintiff's Choice of Forum*

A plaintiff's choice of forum is normally "given great weight." *D.H. Blair*, 462 F.3d at 107 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). This is especially so in ERISA cases because "Congress purposefully enacted a broad venue provision for ERISA." *Tritt v. Automatic Data Processing, Inc. Long Term Disability Plan Adm'r*, No. 3:06-cv-2065 (CFD), 2008 WL 2228841, at *2 (D. Conn. May 27, 2008) (collecting sources); *see also Marton v. Chase Manhattan Bank, N.A.*, No. 3:96-CV-697, 1998 U.S. Dist. LEXIS 22865, at *9 (D. Conn. Mar. 11, 1998) (noting that "Congress' intent in drafting ERISA's liberal venue provision was to expand an ERISA plaintiff's choice of forum and limit the forum choice of corporate fiduciaries" (citing *Vartanian v. Monsanto Co.*, 880 F. Supp. 63, 73 (D. Mass. 1995); and *Central States, Se. & Sw. Areas Pension Fund v. Salasnek Fisheries, Inc.*, 977 F. Supp. 888 (N.D. Ill. 1997))); *accord In re Principal U.S. Prop. Account Litig.*, 09–CV9889 (CM), 2010 WL 1645042, at *3 (S.D.N.Y. Apr. 22, 2010).

But even in the ERISA context, a plaintiff's choice of forum is "not controlling." *Semente v. Empire Healthchoice Assurance, Inc.*, No. 14–CV–5644 (JMF), 2014 WL 4967193, at *3 (S.D.N.Y. Sept. 29, 2014). To rule otherwise would render Section 1404(a) "all but meaningless." *Id.* Where, "the plaintiff's choice is not [her] home forum," her choice receives less weight because "the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (quoting *Piper Aircraft*, 454 U.S. at 255–56). Furthermore, "when the operative facts have few meaningful connections to the plaintiff's chosen forum," the importance of the plaintiff's choice "measurably diminishes." *Harris v. Brody*, 476 F. Supp. 2d 405, 406 (S.D.N.Y. 2007) (citing *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y 1998); and *Crutchfield v. Country Wide Home Loans*, No. 02 Civ. 9092, 2003 WL 102879, *1–2 (S.D.N.Y. Jan. 3, 2003)). In addition, "where it appears that the plaintiff was forum shopping and that the selected forum has little or no connection with the parties or the subject matter, plaintiff's choice of forum is entitled to *no weight whatever*, and the transfer of venue is appropriate." *Farrior v. George Weston Bakeries Distribution, Inc.*, No. 08–CV–2705 (JFB)(WDW), 2009 WL 113774, at *3 (E.D.N.Y. Jan. 15, 2009) (emphasis added) (quoting *Pierce v. Coughlin*, 806 F. Supp. 426, 429 (S.D.N.Y. 1992)); *see also Charter Oak Fire Ins. Co. v. Broan-Nutone, L.L.C.*, 294 F. Supp. 2d 218, 222 (D. Conn. 2003) (noting that transfer is the "proper antidote" where forum shopping was the "sole reason" for plaintiff's choice of forum (quoting *Novo Nordisk of N. America, Inc. v. Genentech, Inc.*, 874 F. Supp. 630, 632 (S.D.N.Y. 1995))).

Plaintiff's choice of forum is entitled to little to no weight here. This is not Plaintiff's home forum; the record reflects that Plaintiff resides in Georgia and has resided there almost exclusively for the last two decades. (*See* Compl. Ex. B at 2 (Plaintiff's account of personal background);

Compl. Ex. F at 1 [ECF No. 1-6] (Georgia address in July 2020); Wiltrout Decl. Ex. 2 at 1 [ECF No. 9-3] (Georgia address in August 2014); Wiltrout Decl. Ex. 4 at 1 [ECF No. 9-5] (Georgia address in October 2019); Wiltrout Decl. Ex. 6 at 4 (Georgia address in November 2019); Wiltrout Decl. Ex. 7 at 1 [ECF No. 9-8] (Georgia address in March 2020).)  Plaintiff does not dispute this. Furthermore, as discussed below, the operative facts of this case have no connection to this District. *See Studiengesellschaft v. Kohle MBH v. Shell Oil Co.*, No. 93 CIV. 1868 (PKL), 1993 WL 403340, at *4 (S.D.N.Y. Oct. 8, 1993) ("[T]he weight normally accorded to the plaintiff's choice of forum is diminished substantially where plaintiff has chosen a forum which is neither its home nor the place where the cause of action arose." (collecting cases)).

In addition, it is apparent that in selecting this District, Plaintiff was forum shopping to capitalize on Second Circuit precedents that Plaintiff apparently prefers.  (*See* Def.'s Br. 7; Pl.'s Opp. 19–21; Def.'s Reply 7–8.)  This District has no connection to Plaintiff or the underlying facts and is not more convenient to Plaintiff than her home state forum of Georgia.  Tellingly, in response to Defendant's forum shopping accusations, Plaintiff did not articulate one legitimate, objectively reasonable basis for filing this case in this District, stating simply that venue is "proper" here and that she "considers this forum convenient in all respects."  (Pl.'s Opp. 10, 12.)  *See Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 252 (E.D.N.Y. 2010) (finding that "plaintiffs' choice of forum should be afforded minimal deference here, given that plaintiffs' actions—seeking to try this case in a District in which plaintiffs neither reside nor work—suggest that they may simply be forum shopping" (citing *Foster v. Nationwide Mut. Ins. Co.*, No. 07–cv–4928 (SI), 2007 WL 4410408, at *3 (N.D. Cal. Dec. 14, 2007))); *cf. Tritt*, 2008 WL 2228841, at *2 (finding that defendant did not sufficiently establish that ERISA plaintiff was forum shopping because plaintiff previously resided in the circuit and initially received benefits there).

As explained below, each of the other factors are either neutral or weigh in favor of transfer, overcoming any deference Plaintiff's choice of forum might be due given that this is an ERISA case. *See Semente*, 2014 WL 4967193, at *3 (granting motion to transfer ERISA action notwithstanding argument that plaintiff's choice of forum is entitled to deference); *Aetna Life & Cas. Co. v. Christie*, No. 3:96CV1654 (AHN), 1997 WL 280520, at *3 (S.D.N.Y. May 21, 1997) (same).

### 2. *Convenience of Witnesses*

The convenience of witnesses is generally the single most important factor in deciding whether to transfer an action to another district. *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 437 (S.D.N.Y. 2018) (collecting cases); *DLJ Mortg. Capital, Inc. v. Cameron Fin. Grp., Inc.*, No. 07 Civ. 3746(LAP), 2007 WL 4325893, at *5 (S.D.N.Y. Dec. 4, 2007). Generally, the movant "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Factors Etc., Inc. v. Pro Arts. Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *abrogated on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579, 585–86 (2d Cir. 1990). Where the movant "seeks a transfer 'on account of' several factors, his failure to specify key witnesses and their testimony is not fatal." *Beckerman v. Heiman*, No. 05 Civ. 5234(BSJ)(GWG), 2006 WL 1663034, at *5 (S.D.N.Y. June 16, 2006) (quoting *Connors v. Lexington Ins. Co.*, 666 F. Supp. 434, 455 (E.D.N.Y. 1987)).

As an initial matter, Plaintiff's argument that this factor simply is not implicated because this is an ERISA case that will be resolved through dispositive motions or "a bench trial on the papers" without any witnesses or live testimony is unfounded. (Pl.'s Opp. 4–9.) The Court acknowledges that the procedural posture of this action renders this factor "less significant than in cases where witness testimony will undoubtedly be required." *Tritt*, 2008 WL 2228841, at *3.

But, at this stage, this factor remains relevant since the Court is not prepared to assume that no witness testimony will be needed. *See id.* (citing *Laub v. Aetna Life Ins. Co.*, 549 F. Supp. 2d 571, 575–76 (S.D.N.Y. 2008)); *see also Locher v. Unum Life Ins. Co. of America*, 389 F.3d 288, 296 (2d Cir. 2004) (affirming district court's decision to hold three-day bench trial in ERISA case where six witnesses testified, including several of plaintiff's physicians). Indeed, courts routinely consider this factor in ERISA cases as they normally would in other cases. *See, e.g.*, *McQuennie v. Carpenters Local Union 429*, No. 3:15-cv-00432, 2015 WL 6872444, at *4 (D. Conn. Nov. 9, 2015); *Seitz v. Bd. of Trs. of the Pension Plan of the N.Y. State Teamsters Conference Penson & Ret. Fund*, 953 F. Supp. 100, 103 (S.D.N.Y. 1997).

Defendant has shown that the convenience of witnesses weighs in favor of transfer. Several, if not all, of Plaintiff's physicians are based in the Atlanta metropolitan area. (*See* Compl. ¶ 32 & Ex. D (Dr. Waring); Compl. ¶ 62 & Ex. E (Dr. Hun); Wiltrout Decl. Ex. 2 at 1 (Dr. Cabrera Kang); Wiltrout Decl. Ex. 6 (listing six Atlanta-based treating physicians).) In addition, Drew Eckl, the plan's sponsor and administrator, and Plaintiff's supervising partner from whom she obtained a witness statement in connection with her appeal of termination benefits are located in Atlanta. (Compl. ¶ 1; Compl. Ex. A at 3 [ECF No. 1-1]; Compl. Ex. H; Wiltrout Decl. ¶ 2.) Furthermore, Defendant's claims team is based in Pennsylvania (Wiltrout Decl. ¶ 4), so any employees of Defendant that would need to testify are located outside this District. The Court will not speculate at this juncture—prior to any initial pretrial conference, entry of a civil case management plan or scheduling order, much less discovery or motion practice—whether or not witnesses or live testimony will be necessary in this case. Indeed, Plaintiff claims that she may seek to take "conflict discovery," including depositions of certain witnesses, to ascertain whether and to what extent Defendant's "structural conflict of interest" as both the claims decision-maker

and payor of benefits or the potential bias of Defendant's retained consultants affected its benefits determination. (Pl.'s Opp. 13–14.) Plaintiff, however, does not specify where these witnesses are located, only claiming that they are not in Georgia. (Pl.'s Opp. 14.) The Court cannot assume that these witnesses (and not others) will be necessary or that this District is more convenient for these witnesses.

In short, even though this factor may be less significant in the ERISA context, it nonetheless favors transfer as Defendant has pointed to several potential witnesses in the Northern District of Georgia and neither party has identified a single potential witness in this District. *See McQuennie*, 2015 WL 6872444, at *4 (finding that convenience of witnesses weighed in favor of transfer where no potential witnesses were located in present district even though case would likely be resolved by dispositive motions); *Seitz*, 953 F. Supp. at 103 (granting motion to transfer ERISA action and noting that all the witnesses relevant to the administration of the plan are located in transferee district); *see also Semente*, 2014 WL 4967193, at *2 (finding that convenience of witnesses favored transfer in ERISA case because all potential witnesses were located in transferee district).

3. *Location of Relevant Documents and Relative Ease of Access to Sources of Proof*

It is widely accepted that the location of documents has become less significant "given the technological age in which we live, with the widespread use of, among other things, electronic document production." *Farrior*, 2009 WL 113774, at *6 (collecting cases); *see also Starr Indem. & Liab.*, 324 F. Supp. 3d at 441 ("In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly." (quoting *Larew v. Larew*, No. 11 Civ. 5771 (BSJ) (GWG), 2012 WL 87616, at *5 (S.D.N.Y. Jan. 10, 2012))). Courts thus generally treat this factor as neutral absent a showing of particular relevance to the case. *See Starr*

*Indem. & Liab.*, 324 F. Supp. 3d at 441; *Tritt*, 2008 WL 2228841, at *3; *Cohn v. Metro. Life Ins., Co.*, No. 07 Civ. 0928(HB), 2007 WL 1573874, at *5 (S.D.N.Y. May 31, 2007). The parties concede that this factor is not particularly relevant here, (Def.'s Br. 4 n.2; Pl.'s Opp. 4, 6), and accordingly, the Court treats this factor as neutral.

### 4. *Convenience of Parties*

When analyzing the convenience of the parties, courts generally look to the parties' principal places of business, the location of their offices, or their residences. *Travelers Prop. Cas. Co. of America v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 376 (W.D.N.Y. 2018) (quoting *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 618 (S.D.N.Y. 2016)); *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 328 (E.D.N.Y. 2006). "[T]here is naturally a presumption that the location of a party's residence is a convenient forum for that party." *Sarracco v. Ocwen Loan Servicing, LLC*, 220 F. Supp. 3d 346, 358 (E.D.N.Y. 2016) (citing *Wine Mkts. Int'l, Inc. v. Bass*, 939 F. Supp. 178, 182 (E.D.N.Y. 1996)).

This factor generally "favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014) (citing *Royal Ins. Co. of Am. v. Tower Records, Inc.*, No. 02 Civ. 2612, 2002 WL 31385815, at *6 (S.D.N.Y. Oct. 22, 2002)). This factor is neutral, however, when "transferring venue would merely shift the inconvenience to the other party." *Id.* (quoting *AIG Fin. Prods. Corp. v. Pub. Util. Dist. No. 1 of Snohomish Cnty.*, 675 F. Supp. 2d 354, 370 (S.D.N.Y. 2009)). In assessing convenience of the parties, courts compare the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer from the transfer of the action to the transferee district. *Cf. Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74 (2d Cir. 2001) (referencing comparison in *forum*

*non conveniens* context); *accord Turner v. Cincinnati Ins. Co.*, No. 6:19-CV-642-ADA-JCM, 2020 WL 210809, at *2 (W.D. Tex. Jan. 14, 2020).

As a preliminary matter, despite the parties' contentions about burdens on counsel (*see* Def.'s Br. 9; Pl.'s Opp. 13; Def.'s Reply 7 n.3), "the convenience of counsel is not of particular importance." *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 29 (S.D.N.Y. 2016) (quoting *GlaxoSmithKline Biologicals, S.A. v. Hospira Worldwide, Inc.*, No. 13–cv–1395 (PKC), 2013 WL 2244315, at *3 (S.D.N.Y. May 21, 2013)). Considering the convenience of the *parties*, Defendant maintains its principal place of business in this District (Compl. ¶ 5; Answer ¶ 5), while Plaintiff resides in the Northern District of Georgia. Transfer therefore would largely shift the inconvenience from Plaintiff to Defendant—an unusual request for a defendant—which generally would make this factor neutral. *See, e.g.*, *Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*, No. 08 Civ. 8106 (PGG), 2009 WL 2252116, at *6 (S.D.N.Y. July 28, 2009) (finding convenience of parties neutral where "one side or the other will be inconvenienced no matter where this case proceeds").

The Court, however, cannot ignore how much more convenient litigating in the Northern District of Georgia would be for Plaintiff. *Cf. In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006) (noting that plaintiffs who reside outside New York "cannot claim that New York is the more convenient forum for them"). Plaintiff alleges that she experiences "constant nausea, regular vomiting, copious amounts of gas and bowel issues, frequent abdominal pain and incapacitating fatigue on a daily basis." (Compl. ¶ 60; *see also* Compl. ¶ 69 (noting that Plaintiff "would have to throw up numerous times," "seemed drained of energy and listless physically and mentally," and "would all of a sudden become very sleepy and need to take a nap").) While she "explicitly consents" to travel to this District despite the ongoing COVID-19

pandemic (Pl.'s Opp. 10), Plaintiff does not represent that it would be *convenient* (or safe) for her to do so. These considerations further support a finding that Plaintiff's choosing this District is tantamount to forum shopping, which diminishes any deference to Plaintiff's choice of forum.

The Court, moreover, declines to lend credence to Plaintiff's assertion that the inconveniences of litigating in this District should be disregarded entirely given the *temporary* shift to remote proceedings due to the COVID-19 pandemic. (Pl.'s Opp. 9–10.) This case is at its inception, and the State of New York and the Southern District of New York have begun lifting COVID-19-related restrictions. The Court will not speculate whether or to what extent the parties' physical presence will be required in connection with this case.

Because litigating in the Northern District of Georgia would not shift any burden to Plaintiff, and indeed, would be significantly more convenient for Plaintiff given her medical condition, the Court finds that this factor weighs slightly in favor of transfer. *See Dickerson*, 315 F.R.D. at 29 (finding that convenience of parties favored transfer to plaintiff's home district notwithstanding fact that a defendant had corporate offices in current district because that defendant joined in co-defendant's motion to transfer, "thereby expressing that it will not be inconvenienced by the proposed transfer"); *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 791 & n.5 (S.D. Tex. 2005) (finding convenience of parties favored transfer to division of district where plaintiff resided, rejecting argument that transfer would be more inconvenient for movant because movant had requested transfer and transfer would not shift burden from movant to plaintiff).

## 5. *Locus of Operative Facts*

"The location of operative facts is a primary factor in determining a § 1404(a) motion to transfer." *Rosen v. Ritz–Carlton Hotel Co. LLC*, No. 14–cv–1385 (RJS), 2015 WL 64736, at *4

(S.D.N.Y. Jan. 5, 2015) (quoting *Whitehaus Collection v. Barclays Prods., Ltd.*, No. 11–CV–217 (LBS), 2011 WL 4036097, at *2 (S.D.N.Y. Aug. 29, 2011)).  "To determine the locus of operative facts, the court should look to the site of the events from which the claim arises." *Tritt*, 2008 WL 2228841, at *2 (quoting *Kiley v. AchieveGlobal, Inc.*, No. 05–CV–165, 2006 WL 2475248, at *3 (D. Conn. Aug. 24, 2006)).  In ERISA cases specifically, courts consider, *inter alia*, where the plaintiff lived, worked, applied for benefits, and received payments. *See McQuennie*, 2015 WL 6872444, at *2; *Joyner v. Cont'l Cas. Co.*, No. 11 Civ. 6005(JSR), 2012 WL 92290, at *1 (S.D.N.Y. Jan. 9, 2012).

Significantly, not one operative fact occurred in this District.  Plaintiff concedes this but argues that no operative facts occurred in Georgia either.  (Pl.'s Opp. 16.)  That plainly is not correct.  As explained above, Plaintiff resides in in the Northern District of Georgia, and her treating physicians are based there.  Plaintiff also worked and earned benefits in that district, and Drew Eckl, the plan's sponsor and administrator, is located there.  (Compl. ¶ 1; Compl. Ex. A at 3; Wiltrout Decl. ¶ 2.)  During the claims process, Defendant sent correspondence to and received correspondence from Plaintiff at her home in the Northern District of Georgia.  (*See* Wiltrout Decl. Ex. 4 at 1; Wiltrout Decl. Ex. 5 at 1; Wiltrout Decl. Ex. 7 at 1.)  Defendant also received correspondence from Plaintiff's Georgia-based physicians.  (Wiltrout Decl. Ex. 3 at 4; Wiltrout Decl. Ex. 5 at 4.)  Furthermore, the review and decisions on Plaintiff's long-term disability claim occurred through Defendant's claims unit and appeals department located not in New York, but in Pennsylvania and Kentucky, respectively.  (Wiltrout Decl. ¶ 4; Wiltrout Ex. 5 at 1.)

Because the operative facts occurred in the Northern District of Georgia, this factor heavily favors transfer. *See McQuennie*, 2015 WL 6872444, at *2 *Joyner*, 2012 WL 92290, at *1; *Cohn*, 2007 WL 1573874, at *3 (finding locus of operative facts favored transfer where ERISA plaintiff

lived, worked, and was treated by doctors based in transferee district and received benefits under a plan sponsored and funded by a company's office in that district); *see also Kiley*, 2006 WL 2475248, at *3 (considering where ERISA plaintiffs worked and communicated with defendants' employees about their employment and termination).

6. ***Availability of Process To Compel the Attendance of Unwilling Witnesses***

Under Federal Rule of Civil Procedure 45(c)(1)(A), a district court generally cannot issue a subpoena that would compel a nonparty witness to travel more than 100 miles or out of the state. Fed. R. Civ. P. 45(c)(1)(A); *Starr Indem. & Liab.*, 324 F. Supp. 3d at 440. Courts generally treat this factor as neutral where there is no indication that nonparty witnesses would refuse to appear. *Rindfleisch*, 752 F. Supp. 2d at 260; *Farrior*, 2009 WL 113774, at *7.

Here, there is no indication whether the prospective nonparty witnesses would refuse to testify or appear in this District. Accordingly, this factor is neutral. *See Ocean Reef Charters*, 324 F. Supp. 3d at 383 (holding that "absent any indication that [defendant's] non-party witnesses would be unwilling to testify in this case, the availability of compulsory process factor does not weigh strongly for or against transfer"); *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 354 (E.D.N.Y. 2012) ("There is no indication that any non-party witnesses would refuse to appear and, thus, this factor is neutral."); *see also Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722, 743 (S.D.N.Y. 2001) ("As the Second Circuit has suggested, the unavailability of compulsory process is a less compelling factor where a defendant has not claimed that its potential witnesses would be unwilling to testify." (citing *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 47 (2d Cir. 1996))).

### 7.  *Relative Means of the Parties*

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *EasyWeb Innovations*, 888 F. Supp. 2d at 354–55 (quoting *800–Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994)).  "A party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." *Neil Bros.*, 425 F. Supp. 2d at 331 (quoting *Federman Assocs. v. Paradigm Med. Indus., Inc.*, No. 96 Civ. 8545, 1997 WL 811539, *4 (S.D.N.Y. Apr. 8, 1997)).

The Court finds that this factor is neutral because neither party has produced any documentation showing a financial hardship caused by litigating in this District as compared to the Northern District of Georgia and vice versa.  *See Lapushner v. Admedus Ltd.*, No. 18-CV-11530 (ALC), 2020 WL 777332, *5 (S.D.N.Y. Feb. 14, 2020) (alteration omitted) (finding relative means of parties neutral where "neither party has submitted any evidence or documentation detailing significant financial disparities, nor has either party alleged that transferring the case to Minnesota (or maintaining the case in New York) would be 'unduly burdensome to their finances'" (quoting *Seltzer v. Omni Hotels*, No. 09-cv-9115, 2010 WL 3910597, at *5 (S.D.N.Y. Sept. 30, 2010))); *Aldino v. I.K. Sys., Inc.*, No. 18-CV-6781 (DLI)(CLP), 2019 WL 4887655, at *4 (E.D.N.Y. Sept. 30, 2019) ("Plaintiff has not offered any such documentation, so the relative means of the parties is a neutral factor."); *Quan v. Comput. Scis. Corp.*, Nos. CV 06–3927(CBA)(JO), CV 06–5100(CBA)(JO), 2008 WL 89679, at *7 (E.D.N.Y. Jan. 7, 2008) ("Absent any information demonstrating that the plaintiffs would be financially prejudiced by

having to litigate in California, this factor adds nothing to my analysis." (citing *Neil Bros.*, 425 F.

Supp. 2d at 331)).

**8.** ***Forum's Familiarity with Governing Law***

"[A]ll federal courts are presumed to be equally familiar with federal law." *1199 SEIU United Healthcare Workers E. v. Alaris Health at Hamilton Park*, No. 18-cv-3336 (JSR), 2018 WL 9651077, at *3 (S.D.N.Y. Sept. 4, 2018) (quoting *SEC v. Comm. on Ways & Means of the U.S. House of Reps.*, 161 F. Supp. 3d 199, 225–26 (S.D.N.Y. 2015)). Because Plaintiff's cause of action arises under ERISA, a federal statute (Compl. ¶¶ 104–110), this factor is neutral. *See Quan*, 2008 WL 89679, at *7 (finding forum's familiarity with governing law neutral where case arose under ERISA); *Cohn*, 2007 WL 1573874, at *5 (same); *see also Hanger Orthopedic Grp.*, 418 F. Supp. 2d at 170 (finding factor neutral where plaintiff alleged only federal claims).

**9.** ***Judicial Economy and the Interests of Justice***

When weighing judicial economy, courts generally compare the docket congestion of the present district and the proposed transferee district. *Alcon Laboratories, Inc. v. Lens.com, Inc.*, No. 18-cv-407 (NG) (RLM), 2019 WL 254038, at *7 (E.D.N.Y. Jan. 17, 2019). Docket conditions and calendar congestion, however, are "certainly not decisive," *Ocean Reef Charters*, 324 F. Supp. 3d at 385 (quoting *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 991 (E.D.N.Y. 1991)), and "insufficient on [their] own to support a transfer motion," *Hanger Orthopedic Grp.*, 418 F. Supp. 2d at 171 (quoting *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 406 (S.D.N.Y. 1998)). "The interests of justice are based on the totality of the circumstances." *Ocean Reef Charters*, 324 F. Supp. 3d at 385 (quoting *TM Claims Serv. v. KLM Royal Dutch Airlines*, 143 F. Supp. 2d 402, 407 (S.D.N.Y. 2001)).

The parties dispute the congestion of the dockets and calendars in this District and the Northern District of Georgia. Citing the same data, Plaintiff argues that the Northern District of Georgia has more cases per judge than this District (Pl.'s Opp. 17–19), while Defendant argues that the median disposition time of a civil case in this District is longer than in the Northern District of Georgia (Def.'s Reply 8–9). *See* Table C-5: U.S. District Courts—Median Time From Filing to Disposition of Civil Cases, by Action Taken—During the 12-Month Period Ending December 31, 2020, U.S. CTS. (Dec. 31, 2020), https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2020/12/31. Courts in this Circuit have considered both metrics in assessing docket conditions and calendar congestion. *See, e.g.*, *002152706 Ontario Ltd. v. Changer & Dresser, Inc.*, No. 15-CV-20S(F), 2018 WL 9785301, at *5 (W.D.N.Y. July 19, 2018) (time of disposition); *Litton v. Avomex Inc.*, No. 08-CV-1340, 2010 WL 160121, at *18 (N.D.N.Y. Jan. 14, 2010) (caseload per judge).

The Court finds that considerations of judicial economy and trial efficiency are neutral in this case. First, "there is no binding authority as to the weight to be accorded to the[] different measures of docket conditions" cited by the parties. *Adirondack Transit Lines, Inc. v. Greyhound Lines, Inc.*, No. 1:15-CV-01227 (LEK/CFH), 2016 WL 5415772, at *7 (N.D.N.Y. Sept. 28, 2016); *see also Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb Inc.*, Nos. 06 Civ.1942(HB), 06 Civ.2025(HB), 06 Civ. 2659(HB), 06 Civ. 2916(HB), 06 Civ. 2918(HB), 06 Civ. 3106(HB), 06 Civ. 3653(HB), 2006 WL 1524590, at *6 (S.D.N.Y. June 5, 2006) (crediting competing statistics and "call[ing] it a draw"). Second, while data on the median disposition time of civil cases appears to be relied on more frequently, the statistics are "subject to substantial fluctuation" and without further details, the Court cannot assess their accuracy. *Monfried v. Sigma Fin. Corp.*, No. 15-CV-2806 (VSB), 2016 WL 9724977, at *6 (S.D.N.Y. June 14, 2016). There can be no

doubt that the "Southern District of New York is one of the busiest district courts in the country" with a heavy complex commercial and criminal docket. *Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009). However, the Court declines to engage in the parties' debate about which district, the Southern District of New York or the Northern District of Georgia, is busier or more burdened. There can be no debate that district courts have the inherent authority to manage their dockets at their own discretion. *See Dietz v. Bouldin*, ___ U.S. ____, 136 S. Ct. 1885, 1892 (2016) (noting that "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases" (collecting cases)); *accord Collins v. Kohl's Dep't Stores, Inc.*, No. 3:18-cv-00065 (VAB), 2018 WL 2926301, at *10 (D. Conn. June 11, 2018). In light of this, the Court finds that judicial economy and trial efficiency are neutral factors with respect to the transfer analysis.

The interests of justice, however, weigh in favor of transfer. This case has no relation to this District, and the only apparent reason for filing here is forum shopping. *See Mohamed v. Tesfaye*, No. 18-cv-8469(JSR), 2019 WL 1460401, at *6 (S.D.N.Y. Jan. 24, 2019) ("[T]he interests of justice require that this Court not reward forum shopping." (quoting *Lewis-Gursky v. Citigroup, Inc.*, No. 15CV3213-LTS-DCF, 2015 WL 8675449, at *2 (S.D.N.Y. Dec. 11, 2015))). Plaintiff herself would be better served by litigating in her backyard where the bulk of the events occurred and witnesses are located. *See Khankhanian v. Khanian*, No. 16 Civ. 8396 (JFK), 2017 WL 1314124, at *7 (S.D.N.Y. Apr. 6, 2017) ("Where the 'natural focus' of the case is in the transferee forum, transfer to that district is consistent with the interest of justice." (quoting *Delarosa v. Holiday Inn*, No. 99 CIV-2873 (RWS), 2000 WL 648615, at *5 (S.D.N.Y. May 19, 2000))). Because this District "is one of the busiest in the country," it is "a paradigmatic congested center of litigation." *Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*, No. 13-CV-9239 (CS), 2017 WL

972117, at *8 (S.D.N.Y. Mar. 10, 2017) (quoting *Tel. Sys. Int'l Inc. v. Network Telecom PLC*, 303 F. Supp. 2d 377, 384 (S.D.N.Y. 2003)).  Retaining this case "would not serve the interest of justice, and would only 'delay adjudication of other cases brought by parties who are compelled to sue [here].'"  *Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 579 (S.D.N.Y. 2001) (alteration in original) (quoting *Kanbar v. U.S. Healthcare, Inc.*, 715 F. Supp. 602, 606 (S.D.N.Y. 1989)).  In short, although judicial economy and trial efficiency are neutral, the interests of justice weigh in favor of transfer.

*      *      *

Having considered the nine factors, the Court concludes that transfer to the Northern District of Georgia is appropriate.  Those factors that are not neutral all weigh in favor of transfer. No relevant factor undercuts Defendant's motion to litigate where Plaintiff resides.  Plaintiff's choice of forum is not entitled to deference because Plaintiff does not reside in this District, the operative facts occurred outside this District, and Plaintiff cannot identify one legitimate reason for filing this action in this District, which makes clear that she is forum shopping.  Where, as here, "there is no material connection between this district and the operative facts, the interests of justice require the transfer of the action."  *Bunn v. Dash*, No. 19-cv-11804 (MKV), 2020 WL 4586790, at *5 (S.D.N.Y. Aug. 10, 2020) (alteration, ellipsis, and internal quotation marks omitted) (quoting *Brown v. Dow Corning Corp.*, No. 93-cv-5510, 1996 WL 257614, at *2 (S.D.N.Y. May 15, 1996)); *see also Bordiga v. Directors Guild of America*, 159 F.R.D. 457, 462 (S.D.N.Y. 1995) (noting that "[c]ourts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district" (quoting *Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991))).

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motion of Defendant Guardian Life Insurance Company of America to transfer this action.  The Clerk of Court is respectfully requested to terminate docket entries 8 and 18, TRANSFER this case to the Northern District of Georgia, and close the case.


**SO ORDERED.**

Date:  **May 5, 2021**
       **New York, NY**

                              **MARY KAY VYSKOCIL**
                              **United States District Judge**